IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| David Atkins,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    1:22cv630 (LMB/JFA) |
| Doctor Sharma, et al.,<br>    Defendants. | )<br>)<br>) |

MEMORANDUM OPINION

This matter is before the Court upon two Motions to Dismiss—one by defendants J.D. Oates III, Ms. Oseghale, and T. Williams [Dkt. No. 34] and a second by defendants Mr. Foxx and Ms. Hobbs [Dkt. No. 47]—in this civil rights action filed under 42 U.S.C. § 1983 by Virginia state prisoner David Atkins ("plaintiff" or "Atkins"). In addition, Atkins has filed a Motion for Preliminary Injunction. [Dkt. No. 52].[1] For the reasons explained below, defendants Oates, Oseghale, and Williams's Motion to Dismiss will be granted in part and denied in part; defendants Foxx and Hobbs's Motion to Dismiss will be denied; and plaintiff's Motion for Preliminary Injunction will be denied.

**I. Procedural Background**

Plaintiff originally filed this action in June 2022, alleging that Dr. Sharma, Nurse Stith, and Warden T. Williams—all of whom are officials employed at Deerfield Correctional Center—failed to ensure that he was continually provided a diet he claimed was needed to treat a

---

[1] On March 17, 2023, defendants Doctor Sharma and Nurse Stith filed "Waivers of Answer." [Dkt. Nos. 51, 54]. In the order that will accompany this Memorandum Opinion, these defendants will be directed to file or expressly decline to file a dispositive motion with respect to plaintiff's claims against them.

diagnosed case of hypoglycemia. [Dkt. No. 1]. Plaintiff requested $1 million in compensatory damages for these defendants' alleged wrongs. Id. at 6.

On August 2, 2022, the Court found that the Complaint failed to state any viable claim for relief but offered plaintiff an opportunity to amend his pleadings. [Dkt. No. 4]. Plaintiff submitted an Amended Complaint on August 22, 2022, which named a different set of defendants: Assistant Warden J.D. Oates III, Dr. Sharma, and Food Operations Director Oseghale. [Dkt. No. 5]. In this pleading, plaintiff raised his requested relief to $4 million in compensatory damages. Id. at 12.

On December 8, 2022, after the Virginia Attorney General's Office had accepted service on behalf of several defendants, plaintiff sought leave to amend his Complaint once more. [Dkt. No. 20]. Plaintiff's request was granted, [Dkt. No. 21], and he filed his Second Amended Complaint ("SAC") on January 4, 2023, [Dkt. No. 31]. The SAC named seven defendants: J.D. Oates III, Food Service Supervisor Foxx, Food Service Supervisor Hobbs, State Dietitian Natarcha Gregg,[2] Food Service Supervisor Ms. Oseghale, Dr. Sharma, and Nurse Stith.[3] [Dkt. No. 31] at 1-4. In the SAC, plaintiff reduced his requested relief to $3.5 million in monetary damages. Id. at 14.

Because the SAC is the operative pleading in this action, a brief overview of its allegations offers useful context for discussion of the pending Motions to Dismiss and Motion

---

[2] Counsel for defendants Oates, Williams, Oseghale, Foxx, and Hobbs observes that service has not yet occurred on defendant Natarcha Gregg. See [Dkt. No. 35] at 1. The failure to order service on this defendant was inadvertent. Because it appears from the SAC that Gregg is an employee of the Virginia Department of Corrections, counsel for defendants will be directed to inform the Court whether they will accept service on her behalf pursuant to the Court's electronic service agreement with the Virginia Attorney General.

[3] Warden T. Williams was not listed in the caption of the SAC, nor does the SAC include any allegations regarding acts or omissions by Williams.

for Preliminary Injunction; however, recounting its allegations is difficult because the document is not organized chronologically. What is clear is that the SAC alleges that plaintiff was diagnosed with hypoglycemia in 2007, see [Dkt. No. 31] at 11, and asserts that medical records documenting this condition were faxed to officials at Deerfield Correctional Center on November 22, 2019, when plaintiff was transferred there. Id. at 9. Despite having knowledge of plaintiff's medical needs, and despite plaintiff having "suffered multiple seizures" after he arrived at Deerfield, prison officials allegedly failed to provide plaintiff an adequate diet to treat his hypoglycemia until January 3, 2020. Id.

The SAC suggests, without explicitly stating, that plaintiff received a diet adequate to treat his hypoglycemia between January 2020 and roughly the summer of 2022 but that "Nurse Stith and Dr. Shamar [] stopped plaintiff's special diet meals" on an unstated date. Id. This allegedly caused plaintiff to suffer four seizures—two on June 23, 2022, and two on July 10, 2022. Id. In response to those seizures, unnamed members of Deerfield's medical staff are alleged to have reinstated plaintiff's medically prescribed diet, see id.; however, "Food Director Ms. Oseghale refused to honor" the diet for an unspecified length of time, id.

Plaintiff attempted to use the prison grievance system to obtain his specialized diet once more. Id. at 9-10. Oseghale and Oates responded to plaintiff's grievance, indicating that, although plaintiff's medical diet would be reapproved for three months, prison officials wanted to conduct tests on plaintiff before reinstating the diet permanently.[4] Id. at 10. The grievance response indicated that conducting lab tests was important to "confirm [plaintiff's] diagnoses"

---

[4] The SAC does not make clear when exactly plaintiff began to receive his tailored meals again. It suggests that there was at least some small period during which plaintiff was not only not provided with additional portions of food but was provided beans and tomatoes, see [Dkt. No. 31] at 11, ¶ 19, two foods to which plaintiff claims he is allergic and which he did not receive before his diet order changed.

3

because the diet he was receiving to treat his hypoglycemia was itself "put[ting] [his] health and life in danger." Id.

Although the SAC is not clear on this point, it appears to allege that, on November 12, 2022, after the three-month reinstatement of plaintiff's medical diet had lapsed, plaintiff suffered another seizure. Id. at 12. Over the next roughly two weeks, plaintiff's blood sugar repeatedly dropped, and nurses at Deerfield gave him "shots" to return his blood levels to normal. Id. Then, on November 22, 2022, "[a]nother medical diet order was written," but plaintiff "didn't start receiving the trays until December." Id. The SAC's final allegations suggest that, although at the time of filing the SAC plaintiff was receiving an increased amount of food, his food was being served on only one tray instead of two and that something is "always [] missing on the tray." Id. The motions at issue followed.

## II. Motions to Dismiss

In their Motions to Dismiss, J.D. Oates III, Ms. Oseghale, T. Williams, Mr. Foxx, and Ms. Hobbs raise overlapping arguments for dismissal of the SAC.

### A.  *Exhaustion of Administrative Remedies*

Defendants Oates, Oseghale, Hobbs, and Foxx each seek dismissal of the claims against them on the basis that those claims arose after the June 2022 filing of the original Complaint. [Dkt. Nos. 35, 45]. They argue that, because the Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before filing § 1983 actions, and because prisoners may not exhaust remedies during the pendency of such actions, plaintiff's claims arising after June 2022 are barred from review. See [Dkt. No. 35] at 9; [Dkt. No. 45] at 5.

Plaintiff did not exhaust his post-June 2022 claims before filing this suit, and a plaintiff cannot cure an original failure to exhaust administrative remedies by exhausting administrative

4

remedies after filing an action, see Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002); however, claims that arise after a complaint is filed are not subject to dismissal for failure to exhaust "if the plaintiff exhausts his administrative remedies on those claims and then includes them in an amended complaint." Wright v. Lassiter, No. 1:18cv90-MR, 2020 WL 4734413, at *9 (W.D.N.C. Aug. 14, 2020). See also Rhodes v. Robinson, 621 F.3d 1002, 1006 (9th Cir. 2010) (finding that the PLRA's exhaustion requirement was satisfied for new claims which arose after the original complaint was filed and where the plaintiff exhausted administrative remedies for those claims before filing an amended complaint).

Here, plaintiff's claims against Oates, Oseghale, Hobbs, and Foxx are not automatically barred from review by the PLRA because these defendants have not shown that the claims were not exhausted. Consequently, the Motion to Dismiss filed by defendants Hobbs and Foxx—which is predicated solely on plaintiff's alleged failure to exhaust—will be denied in full. The Motion to Dismiss filed by defendants Oates and Oseghale will be denied to the extent it seeks dismissal on a failure to exhaust theory. Cf. Shelton v. Kanode, No. 7:20cv704, 2023 WL 2639279, at *3 (W.D. Va. Mar. 27, 2023) (denying a motion to dismiss raising failure to exhaust defense, observing that "claims that accrued after the filing of the original complaint may proceed if they are exhausted before the filing of an amended complaint bringing them into the action").

### B. *Adequacy of the SAC's Allegations as to Defendants Oates and Williams*

Defendants Oates and Williams also argue that the Second Amended Complaint fails to support any viable claim against them. [Dkt. Nos. 34-35]. They are correct.

The essential claim in this action is that plaintiff was denied a diet he felt was required to treat his diagnosed case of hypoglycemia. [Dkt. No. 31]. He charges Nurse Stith and Dr.

5

Sharma with making the initial decision to withhold this diet. Id. at 9. Plaintiff alleges that he filed grievances regarding Stith and Sharma's decision and that defendant Oates, the Assistant Warden of Deerfield Correctional Center, denied the grievance, explaining that officials within the Virginia Department of Corrections ("VDOC") and the facility wanted to run medical tests on plaintiff to "confirm [his] diagnoses" and determine whether a particular diet remained necessary. Id. at 9-10.

Because Oates is only charged with denying a grievance plaintiff had filed, plaintiff has failed to allege any constitutional claim against him. See Atkins v. Maryland Div. of Corr., No. PWG-14-3312, 2015 WL 5124103, at *6 (D. Md. Aug. 28, 2015) ("The mere fact that [a warden] denied [the plaintiff's] grievances does not alone impose liability."); Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.").

Moreover, to the extent plaintiff claims that Oates should be held liable for failing to overturn the guidance of medical professionals and reinstate plaintiff's formerly prescribed diet, that claim fails. As the Third Circuit has explained, "[i]f a prisoner is under the care of medical experts …, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). The Fourth Circuit has echoed this sentiment, finding "that a distant prison official can generally rely on his medical staff's examinations and diagnoses." Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) (citing Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990)).

Here, the SAC makes clear that Oates investigated plaintiff's claim and learned that there were ongoing efforts within the VDOC to ensure that plaintiff's medical needs were being met.

6

[Dkt. No. 31] at 9-10. Specifically, these officials were seeking to conduct "lab work" to ensure plaintiff's diagnosis of hypoglycemia was accurate so that they could be confident in their choice of an appropriate diet to address plaintiff's hypoglycemia. Id. at 10. Oates was entitled to rely on the expertise of the medical professionals and dietitians under whose supervision he understood plaintiff to be. Because the SAC fails to allege sufficient facts to raise a plausible claim that defendant Oates was deliberately indifferent to plaintiff's medical needs Oates will be dismissed from this civil action.

The Motion to Dismiss requires even less discussion as it relates to defendant Williams. Although named in the original Complaint, Williams has not been named in the Second Amended Complaint. Compare [Dkt. No. 1] with [Dkt. No. 31]. Williams is thus entitled to be dismissed from this civil action. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."); Kurtz v. Snyder, No. 922-cv-0487, 2022 WL 4102864, at *2, n.2 (N.D.N.Y. Sept. 8, 2022) ("[T]he Court does not construe the amended complaint to assert Section 1983 claims against Officers Tinker and Patrelle because plaintiff has not named these individuals as parties to the proceeding."). Even if Williams had been named in the SAC, the SAC does not contain any allegations regarding acts or omissions taken by Williams, and there is therefore an insufficient factual basis on which to support any claim against him.

### III. Motion for Preliminary Injunction

Next at issue is plaintiff's Motion for a Preliminary Injunction, through which he seeks "an injunction holding that the Defendants, or their agents, cannot interfer [sic] with plaintiff's serious medical food diet meals." [Dkt. No. 52] at 3. Since filing this Motion, plaintiff was transferred to what appears to be the medical department of State Farm Correctional Center. See [Dkt. No. 68] ("I am writing to inform the Court I have been transfered [sic] out of Deerfield" to

"Infirmary 174-2, 3500 Woods Way, State Farm, VA 23960.").[5] Because the defendants named in the SAC were employees of Deerfield Correctional Center, by virtue of his transfer, plaintiff is now under the custody and care of entirely new officials who are not subjects of or parties in this suit. Thus, plaintiff's transfer to a new facility has rendered his request for injunctive relief moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 248–49 (4th Cir. 2005) (pretrial detainee's release moots his claim for injunctive relief); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (concluding that the transfer of a prisoner rendered moot his claim for injunctive relief).

### IV. Conclusion

For the reasons stated above, defendants Oates, Oseghale, and Williams's Motion to Dismiss will be granted in part and denied in part; defendants Foxx and Hobbs's Motion to Dismiss will be denied; and plaintiff's Motion for Preliminary Injunction will be denied in an Order that will accompany this Memorandum Opinion.

Entered this 6th day of September 2023.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

---

[5] 3500 Woods Way is the address of State Farm Correctional Center, which is not itself a medical facility but likely contains a medical department in which plaintiff now finds himself housed. See FACILITIES & OFFICES, https://vadoc.virginia.gov/facilities-and-offices/ (last accessed September 5, 2023).