IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **David Atkins,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **1:22cv630 (LMB/JFA)** |
| ) | |
| **Dr. Sharma, et al.,** ) | |
|     **Defendants.** ) | |

<u>MEMORANDUM OPINION</u>

In this civil rights action filed under 42 U.S.C. § 1983, Virginia state prisoner David Atkins ("plaintiff"), who is acting <u>pro se</u>, alleges that officials at Deerfield Correctional Center (or "DCC") and the Virginia Department of Corrections (or "VDOC") failed to ensure he received an appropriate diet to treat his diagnosed case of hypoglycemia. [Dkt. Nos. 1, 5, 31]. Three dispositive motions are before the Court: a Motion to Dismiss filed by defendants Dr. Sharma and Nurse Stith [Dkt. No. 76]; a Motion to Dismiss filed by defendants Mr. Foxx, Natarcha Gregg, and Ms. Hobbs [Dkt. No. 82]; and a Motion for summary Judgment filed by defendant Ms. Oseghale [Dkt. No. 84].[1] Counsel for defendants filed <u>Roseboro</u>[2] notices informing plaintiff of his right to respond to these motions and stating that plaintiff's failure to file oppositions could result in the Court granting the motions solely on the basis of the information and evidence filed by the defendants. [Dkt. Nos. 78, 91, 92]. Despite receiving this clear guidance, plaintiff has opposed only Ms. Oseghale's Motion for Summary Judgment. <u>See</u>

---

[1] Also pending is a Motion to Withdraw as Attorney by Attorney Grace Morse-McNelis [Dkt. No. 87] and a Motion to Add Defendant [Dkt. No. 89] and a Motion for Appointment of Counsel [Dkt. No. 93] filed by plaintiff. These ancillary Motions will also be addressed in the body of this Opinion.

[2] <u>See</u> <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).

[Dkt. No. 88]. The arguments raised in the two pending Motions to Dismiss are unopposed and will be granted. The Court will also grant defendant Oseghale's Motion for Summary Judgment and dismiss this action with prejudice.

## I. Motions to Dismiss

### A. *Background*

The two pending Motions to Dismiss attack the sufficiency of plaintiff's Second Amended Complaint ("SAC"). The allegations in the SAC are difficult to understand because they are not organized chronologically; however, it appears that the SAC alleges that plaintiff was diagnosed with hypoglycemia in 2007, see [Dkt. No. 31] at 11, and medical records documenting this condition were faxed to officials at Deerfield Correctional Center on November 22, 2019, when plaintiff was transferred to that facility, id. at 9. Despite having learned of plaintiff's medical needs, and despite plaintiff having "suffered multiple seizures" after he arrived at the facility, prison officials at Deerfield allegedly did not provide plaintiff an adequate diet to manage his hypoglycemia until January 3, 2020. Id.

The SAC next suggests, without explicitly stating, that plaintiff received a medically appropriate diet between January 2020 and roughly the summer of 2022 but that "Nurse Stith and Dr. Shamar [] stopped plaintiff's special diet meals" on an unstated date. Id. This allegedly caused plaintiff to suffer four seizures—two on June 23, 2022, and two on July 10, 2022. Id. In response to those seizures, unnamed members of Deerfield's medical staff are alleged to have reinstated plaintiff's medically prescribed diet on July 13, 2022, see id.; however, the SAC claims that "Food Director Ms. Oseghale refused to honor" the diet for an unspecified length of time. Id.

2

Plaintiff attempted to use the prison grievance system to obtain his specialized diet once more. Id. at 9-10. Oseghale and Oates responded to plaintiff's grievance, indicating that, although plaintiff's medical diet would be reapproved for three months, prison officials wanted to conduct tests on plaintiff before reinstating the diet permanently. Id. at 10. The response also indicated that conducting lab tests was important to "confirm [plaintiff's] diagnoses," as the diet he was receiving to treat his hypoglycemia was so highly caloric that it was itself "put[ting] [plaintiff's] health and life in danger." Id.

Although the SAC is unclear, it appears to allege that, on November 12, 2022, after the conclusion of the three-month reinstatement of his medical diet, plaintiff suffered another seizure. Id. at 12. Over the next two weeks, plaintiff's blood sugar dropped on three occasions, and nurses at Deerfield gave him "shots" to return his blood levels to normal. Id. On November 22, 2022, "[a]nother medical diet order was written," but plaintiff "didn't start receiving the trays until December." Id. The SAC alleges that when plaintiff eventually received his new diet, defendant Hobbs "put all the food items on one tray" instead of two. Id. He further claims that there is "always something missing on the tray." Id. Finally, the SAC claims that, on unstated dates, defendants Foxx, Hobbs, and Gregg "decided to serve plaintiff's food [with] items that he was allergy [sic] to beans and tomatoes." Id. at 11.

### B. *Standard of Review*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider the sufficiency of a complaint, not to resolve contests surrounding facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

3

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To do so, the complaint must allege specific facts in support of each element of each claim it raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Id.

C. *Analysis*

Plaintiff's claims against defendants Sharma, Stith, Foxx, Hobbs, and Gregg—the defendants who filed motions to dismiss—arise under the Eighth Amendment. With respect to medical care in a prison, such a claim has two elements. First, a plaintiff must show that he suffers from a sufficiently serious medical need. A need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or … is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Second, the plaintiff must show that a defendant was deliberately indifferent to his serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[A]n official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 225-26 (4th Cir. 2016)). A prisoner's mere disagreement with medical personnel over the course of his treatment is inadequate to state a cause of action. See United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011).

The SAC satisfies the first element of an Eighth Amendment claim by alleging that plaintiff has been diagnosed with chronic hypoglycemia. With regard to the second element, the SAC lacks sufficient factual allegations. First, the SAC alleges that defendants Foxx, Hobbs, and Gregg "refused plaintiff's special diet meals," and instead served him meals containing beans and tomatoes, to which he claims he was allergic. See [Dkt. No. 31] at 11. The SAC does

not identify when these acts occurred nor which of plaintiff's many special diets they allegedly failed to provide. Additionally, although plaintiff claims to have suffered a number of seizures during his incarceration at DCC, he does not draw any temporal connection—let alone a causal connection—between any of those incidents and the alleged acts or omissions of Foxx, Hobbs, or Gregg. Consequently, the Court concludes that the SAC's allegations against these defendants are too vague to warrant relief. Cf. Torres v. Paredes, No. 22-cv-448-JES-JLB, 2023 WL 3855047, at *6 (S.D. Cal. June 6, 2023) (finding in context of excessive force claims that a failure to allege when specific incidents occurred meant the complaint "fail[ed] to show a causal connection between the defendant's alleged wrongful conduct and the constitutional violation" and was therefore subject to dismissal as "vague and conclusory"); Davis v. Penzone, No. CV 17-01912-PHX-DLR (BSB), 2017 WL 8792541, at *6 (D. Ariz. July 25, 2017) ("[Plaintiff] does not allege when and how Alverez learned of Plaintiff's need for surgery and what reason, if any, Alverez gave for his refusal to authorize the recommended operation. Without such information, Plaintiff cannot state a claim against Alverez based on deliberate indifference."). For this reason, defendants' Foxx, Hobbs, and Gregg's Motion to Dismiss will be granted.

As to defendants Sharma and Stith, the SAC seeks only injunctive relief, see [Dkt. No. 31] at 13-14; however, because plaintiff has been transferred away from DCC such relief has become moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); Slade v. Hampton Roads Reg. Jail, 407 F.3d 243, 248-49 (4th Cir. 2005) (pretrial detainee's release moots his claim for injunctive relief); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (concluding that the transfer of a prisoner rendered moot his claim for injunctive relief). For this reason, defendants Sharma and Stith's Motion to Dismiss also will be granted.

## II. Motion to Add Defendant

In his Motion to Add Defendant, plaintiff seeks to "add the defendant Paul Targonski, Supervisor/Chief Physician of the Virginia Department of Corrections." [Dkt. No. 89] at 1. In support of the motion, plaintiff alleges that Targonski was deliberately indifferent to his medical needs because, as the "Chief Physician," he "can have any diet enforced" but nevertheless did not ensure plaintiff's double-portion continued throughout his incarceration at DCC. Id. at 1-7.

Because this motion contains new factual allegations upon which plaintiff seeks relief, the Motion essentially seeks the Court's permission to amend or supplement plaintiff's Complaint. Although the Federal Rules of Civil Procedure provide that a district court should "freely give leave [to amend] when justice so requires," see Fed. R. Civ. P. 15(a)(2), it need not provide leave if "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). If the proposed amended complaint fails to state a claim for relief, amendment would be futile, and denial of a motion to amend is appropriate. See United States v. Kellogg Brown & Root Inc., 525 F.3d 370, 376 (4th Cir. 2008).

The new allegations in the plaintiff's motion fails to state a claim for relief against Dr. Targonski, and the Court therefore will deny the motion to add him as a defendant in this litigation. Plaintiff has submitted several emails to support his putative claim against Targonski, see [Dkt. No. 89-1] at 6-8, 10, 12, 14-19, but far from supporting plaintiff's claim, the emails clearly establish that Dr. Targonski had plaintiff's long-term health in mind when suggesting alterations to his diet.

For instance, after he was informed of a diet that an endocrinologist had recommended for plaintiff, Dr. Targonski sought to clarify the matter, inquiring, "May we have some clinical background on the rationale for this order please. And has Nutrition been involved? I think I know the case but would like to be sure and complete the full process." [Dkt. No. 89-1] at 18. Furthermore, Dr. Targonski repeatedly temporarily approved the diets plaintiff had been prescribed while simultaneously seeking to find a more permanent solution to plaintiff's health needs. On July 22, 2022, he wrote, "I approve for 3 months . . . . The patient should be reevaluated if a subsequent request is made, it should please include the long term evaluation and management of the hypoglycemia, as double portions is a temporary solution not really consistent with usual practice." Id. at 16. On November 23, 2022, Targonski wrote an email to Dr. Singareddy, another VDOC official, stating, "They must have billed for a diagnosis so it probably requires a call to endocrine to ferret out exactly their rationale. I know this is a challenging case and I look forward to speaking with you." Id. at 6. He later wrote to Nicole Keeney, a registered dietitian, stating, "I spoke with Dr. Singareddy. I will approve the proposed diet, noting only high protein [E]nsure as a supplement, for 3 months. Please have the facility send me a copy of [plaintiff's] chart, including the notes from outside consultations." Id.

In this light, it is clear that plaintiff's dispute with Targonski is no more than a disagreement regarding the course of treatment he received for his hypoglycemia. Such a disagreement is insufficient to state any Eighth Amendment claim. See, e.g., Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). As a result, it would be futile to accept plaintiff's proposed amendment to the SAC, and the Court will therefore deny his motion to add Targonski as a defendant.

7

### III. Motion for Summary Judgment

The final dispositive motion is a Motion for Summary Judgment submitted by defendant Oseghale. For the reasons that follow, the Motion will be granted.

#### A. *Statement of Undisputed Facts*

The following facts are not in dispute. At all times relevant to this action, plaintiff was a prisoner in the custody of the VDOC housed at DCC, where, beginning in November 2020, defendant Oseghale worked in the Food Service Department. [Dkt. No. 85-3] ("Oseghale Aff.") at 1, ¶ 1. Oseghale now serves as Food Service Director at the facility. She is not a medical practitioner and therefore does not possess qualifications to provide medical advice to inmates regarding their diets. Id. at 3, ¶ 15. Rather, Oseghale is empowered to provide inmates with specific, medically prescribed diets only if the diet has been approved by VDOC medical staff pursuant to VDOC Operating Procedures (or "OP"). Id. at ¶ 14.

Since Oseghale has been employed at DCC, plaintiff has been prescribed several diets designed to address his diagnosed case of chronic hypoglycemia. Id. at 3, ¶ 13. Plaintiff claims in this action that, in July 2022, Oseghale denied him—or "refused to honor"—one such diet. [Dkt. No. 1] at 9. The diet in question called for plaintiff to receive double portions, and Dr. Singareddy—whom the SAC describes as a "Regional Doctor," see [Dkt. No. 31] at 12— approved that diet on July 13, 2022. Id. at 9. At that time, VDOC Operating Procedure 500.1 outlined a variety of "therapeutic diets" that a prisoner could receive at the direction of a medical practitioner. See Oseghale Aff at 4, ¶ 18; Oseghale Aff. Enclosure ("Encl.") A at 6. The list did not include a "double portion diet" but did include a catchall category entitled "Other diet as approved by the Health Services Unit Chief Physician." Id. Because it was a medically prescribed diet that fell into OP 500.1's catchall category, plaintiff's double portion diet required

8

approval from the VDOC's Health Services Unit Chief Physician. Id. In July 2022, VDOC's Health Services Unit Chief Physician was Dr. Paul Targonski. Oseghale Aff. at 4, ¶ 19.

On July 22, 2022, Dr. Targonski approved plaintiff's double portion diet for a three-month period. See id. at ¶ 20; Oseghale Aff. Encl. C at 2. After receiving the email containing Dr. Targonski's approval, defendant Oseghale and other DCC food service employees "began offering Atkins double trays." Oseghale Aff. at ¶ 21. Upon the expiration of his July 2022 prescription, plaintiff "brought another Diet Order for double portions to Food Service dated September 23, 2022 and asked Food Service to follow that Diet Order." Id. at ¶ 22. Although Dr. Targonski approved the renewed diet for an additional three months on November 23, 2022, see Oseghale Aff. Encl. E, defendant Oseghale did not receive word of the diet's approval until December 7, 2022, id.; Oseghale Aff. at 5, ¶ 23. Under the November 2022 diet, plaintiff was additionally prescribed an Ensure protein drink, which he obtained from the medical department rather than the food service department. Oseghale Aff. at ¶ 24.

In March 2023, medical officials within VDOC reevaluated plaintiff's diet. Oseghale Aff. at 6, ¶ 25. They concluded that plaintiff should receive additional protein and vegetables at mealtime, that he should receive fresh fruit or a fruit cup in place of dessert, that he should not receive juice, that his carbohydrate intake should be limited, and that he should receive farina or oatmeal for breakfast. Id. This diet took effect on March 8, 2023. Id.; Oseghale Aff. Encl. G. Oseghale states that, under this diet order, plaintiff's food fit onto one tray and that he therefore was not given two trays. Oseghale Aff. at ¶ 25. Nevertheless, plaintiff repeatedly complained that he was no longer receiving two trays of food and that items would frequently be missing when officials "tr[ied] to put all the food items on one tray." SAC at ¶ 26.

9

Despite the fact that plaintiff was routinely prescribed individualized diet orders, the record shows that he frequently failed to comply with those orders by selling food items to other inmates, purchasing food products and snacks from the prison commissary, and attempting to ship dozens of bottles of Ensure protein drinks out of the facility. Oseghale Aff. at 7, ¶ 29; [Dkt. No. 85-1] ("Oates Aff.") at 2, ¶¶ 7-8.

### B. *Standard of Review*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### C. *Analysis*

As discussed above, an Eighth Amendment claim requires a prisoner to show that he suffers from a sufficiently serious medical need and that prison officials were deliberately indifferent to that need. See Iko, 535 F.3d at 241; Farmer, 511 U.S. at 837. A prisoner's mere disagreement with medical personnel over the course of his treatment is inadequate to state a

10

cause of action. See Clawson, 650 F.3d at 538. Here, there is no dispute with respect to the first element of this test, which plaintiff has satisfied by showing that he has been diagnosed with chronic hypoglycemia; however, for the reasons explained below, the Court concludes that there is no genuine dispute with respect to the second element and that defendant Oseghale was not deliberately indifferent to plaintiff's condition.

The extent of the claim against Oseghale is that she temporarily failed to honor diet orders that had been written for plaintiff. See SAC at ¶¶ 14, 23-24. This first occurred in July 2022, after plaintiff had a double portion diet approved by Dr. Singareddy. See SAC at ¶ 14. Plaintiff argues that Oseghale merely "wanted someone other than [Singareddy] to sign [his] diet order", see SAC at ¶ 24, and that her decision to go "over [Singareddy's] head" constituted deliberate indifference, see [Dkt. No. 88] at 2. This is a disingenuous argument that is not supported by the record. Indeed, it is clear from the documents Oseghale has provided that VDOC policy prohibited her from providing plaintiff a non-standard therapeutic diet without the express authorization of Dr. Targonski, the VDOC's chief physician. Oseghale's compliance with VDOC policy is not evidence that she was indifferent to plaintiff's needs. Cf. Williams v. Dehay, 81 F.3d 153 (Table), 1996 WL 128422, at *1 (4th Cir. 1996) (finding no deliberate indifference where nurse complied with policy, consulted with warden about Plaintiff's request for narcotics, and refused to dispense narcotics without the policy-required court order); Burwell v. City of Lansing, Michigan, 7 F.4th 456, 476, n.7 (6th Cir. 2021) (opining that "whether an officer complied with policy can be relevant to establishing the officer's knowledge of the risk to an inmate and whether the officer disregarded that risk"). Moreover, the record establishes that plaintiff was denied his medical diet for a maximum of nine days in July 2022 and that Oseghale promptly began providing plaintiff his prescribed diet as soon as she learned it had been

approved. Finally, the SAC does not allege that plaintiff suffered any seizures or other adverse health effects in the limited window of time he did not receive his therapeutic diet in July 2022.

The SAC next alleges that plaintiff was again denied a medically prescribed diet after his July 2022 diet order expired. But this factual allegation is inadequate for the same reasons already stated. There is simply no evidence in the record that a reasonable factfinder could consider and conclude that defendant Oseghale was deliberately indifferent to plaintiff's medical needs when she waited for the required authorization to provide him a particular diet.

Moreover, plaintiff's complaints that VDOC officials failed to honor his prescribed diets are undermined by the undisputed evidence that plaintiff failed to abide by the terms of those diets. The record contains ample evidence that plaintiff routinely purchased high-sodium and sugary food products from DCC's commissary and attempted to mail dozens of Ensure protein drinks out of the facility. These significant departures from the diets prescribed to plaintiff break any causal chain with respect to whether any of plaintiff's seizures were related to the acts of VDOC officials.

Finally, the SAC does not mention defendant Oseghale in either its "Claims for Relief" or "Relief Requested" sections, meaning that plaintiff does not seek any relief with regard to Oseghale's alleged conduct. See SAC at 12-13. For all of these reasons, Oseghale's Motion for Summary Judgment will be granted.

### IV. Motion for Appointment of Counsel

In his Motion for Appointment of Counsel, [Dkt. No. 93], plaintiff asks the Court to appoint counsel to represent him in this civil action. Pursuant to 28 U.S.C. § 1915(e)(1), a district court has discretion to appoint counsel to indigent litigants proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(1). The Court observed at the outset of this litigation that plaintiff

12

possessed over $7,000 in his inmate trust account and that he therefore did not qualify to proceed without prepayment of fees. See [Dkt. No. 9]. Plaintiff promptly paid the filing and administrative fees in full. See [Dkt. No. 10]. Consequently, the Court concludes that plaintiff is not indigent and that appointment of counsel under 28 U.S.C. § 1915(e)(1) would be inappropriate.

Plaintiff additionally states in his Motion that, although he received Roseboro notices related to defendants' dispositive motions, he did not receive the motions themselves. See [Dkt. No. 93] at 3. The record reflects that these notices were associated with Docket Entries 82 and 84, which, respectively, are the Motion to Dismiss filed by defendants Foxx, Gregg, and Hobbs; and the Motion for Summary Judgment filed by defendants Oseghale. Because plaintiff filed an Opposition to Oseghale's Motion for Summary Judgment, it is clear that he received that motion.

For these reasons, there is no basis on which to appoint counsel for plaintiff.

### V. Motion to Withdraw as Attorney

Finally, the Motion to Withdraw as Attorney [Dkt. No. 87] by Grace Morse-McNelis, counsel for defendants Sharma and Stith, will be granted because the record reflects that Attorney Elizabeth Martin Muldowney has appeared in place of the movant.

### VI. Conclusion

For the reasons stated above, defendants' Motions to Dismiss and Motion for Summary Judgment will be granted. Attorney Grace Morse-McNelis's Motion to Withdraw also will be granted. Plaintiff's Motion to Add Defendant and Motion for Appointment of Counsel will be denied, and this action will be dismissed. An Order will be entered along with this Opinion.

Entered this 27th day of March 2024.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

13